IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MANNATECH, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TECHMEDIA HEALTH, INC., | § | Civil Action No. 3:06-CV-00813-P |
| TRITON NUTRA, INC., | § | |
| IONX HOLDINGS, INC. and | § | |
| JOHN DOES 1-30 | § | |
| | § | |
| Defendants, | § | |
| | § | |

**<u>ORDER</u>**

Now before the Court are the Defendants' Motion for Partial Summary Judgment Against Mannatech, Inc., filed Mar. 26, 2009,[1] and the Defendants' Objection to Findings and Recommendations of the United States Magistrate Judge, filed Sept. 14, 2009.[2] After a thorough review of the evidence, the parties' briefs, and the applicable law, the Court DENIES the Defendants' Motion for Partial Summary Judgment and ACCEPTS the Findings and Recommendations of United Magistrate Judge.

**I.   Background**

Plaintiff Mannatech, Inc. owns by assignment four patents dealing with dietary supplements: U.S. Patent No. 6,929,807 ("807"), U.S. Patent No. 7,157,431, U.S. Patent

---

[1] Plaintiff, Mannatech, Inc., filed its Response to Defendants Motion for Partial Summary Judgment on May 22, 2009, and Defendants filed their reply on June 19, 2009.

[2] Plaintiff filed its Response to the Defendants' Objections to Findings and Recommendations of the United States Magistrate Judge on Oct. 5, 2009, and Defendants filed their reply on Oct. 19, 2009.

**Page 1**

7,196,064, and U.S. Patent 7,202,220. All the patents are continuations of the first patent, 807, and all share a common specification. All of the patents deal with dietary supplements to give "nutritionally effective amounts" of saccharides. In this lawsuit, Plaintiff alleges that Nutrose® and Activive®, dietary supplements sold by the Defendants, infringe upon one or more claims for these patents. (Pl.'s Sec. Am. Compl. at 3). Defendants deny any infringement and maintain that the patents-in-suit are invalid. Defendants submitted a motion for partial summary judgment arguing that the patents were invalid because the phrase "nutritionally effective amounts" was indefinite under 35 U.S.C. § 112. (Defs.' Mot. Summ. J. Br. at 1). Under the authority of 28 U.S.C. § 636(b), this court referred the claim construction to the Honorable Judge Kaplan, United States Magistrate Judge on February 20, 2009. The Magistrate Judge filed his Findings and Recommendations on August 28, 2009. In the Recommendation, the Magistrate Judge proposed that (1) the phrase "isolated and purified" means "separated from other, unwanted substances;" (2) the term "saccharides" means "carbohydrates or sugars which can be in the form of mono-, oligo-, and/or polysaccharides;" and (3) the phrase "nutritionally effective amount" is definite and means "that amount which will provide a beneficial nutritional effect or response in a mammal." *Id.* at 16-17.

   The Defendants' object to the Magistrate Judge's findings and filed their objections before this court on September 14, 2009. The Defendants' first object to the Magistrate Judge's refusal to grant their Motion for Partial Summary Judgment and ask this court to grant that motion. The Defendants also object to the Magistrate Judge's construction of the phrases "isolated and purified" and "nutritionally effective amounts." (Defs.' Obj. to Recomm. at 1). Neither party objects to the Magistrate Judge's construction of "saccharides", and therefore, this court ACCEPTS the

Magistrate Judge's construction of "saccharides" to be "carbohydrates or sugars which can be in the form of mono-, oligo-, and/or polysaccharides." (Recomm. at 14).

## II.     Legal Standards

### A.  Summary Judgment Standard

A court considering summary judgment must draw all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985). Additionally, a court must give due weight to a patent's presumed validity under 35 U.S.C. § 282, and an accused infringer must show by clear and convincing evidence that a patent is invalid. *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir.1996). Furthermore, claim indefiniteness is a question of law "drawn from the court's performance of its duty as the construer of patent claims." *Personalized Media Commc'ns., L.L.C. v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir.1998).

### B.  Standard of Review on Magistrate Findings and Recommendations

Pursuant to 28 U.S.C. § 636(b), a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made . . . [and] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." In addition, a district court "may also receive further evidence or recommit the matter to the magistrate with instructions." *Id*. The decision whether to receive further evidence not originally presented to the magistrate judge rests within the district court's discretion. *Freeman v. County of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998), *cert. denied*, 531 U.S. 933 (2000). Thus, while "the district court need not reject newly-proffered evidence simply because it was not presented to the magistrate judge", "[l]itigants may not . . .

use the magistrate judge as a mere sounding-board for the sufficiency of the evidence." *Id.* Unlike new or amplified evidence, however, new legal objections may be waived if not raised before the magistrate judge initially. *Id.* Finally, in considering the parties' objections, the court need not consider frivolous, conclusory or general objections. *See DFW Vending, Inc. v. Jefferson County*, 991 F. Supp. 578, 582-83 n.3 (E.D. Tex. 1998) (stating that a blanket objection fails the specificity requirement of Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636).

### III.  Motion for Partial Summary Judgment

#### A. Legal Principles

If this court grants the Motion for Partial Summary Judgment then a review of the claim construction is unnecessary. Therefore, the court will address the Motion for Partial Summary Judgment first. It is well established that patent claims are valid by presumption under 35 U.S.C. § 282 unless the claim is "not amenable to construction" or "insolubly ambiguous." *E.g., Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005); *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003); *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1353 (Fed. Cir. 2003); *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Because claims do not have to be absolutely clear to be valid, "claims are not indefinite merely because they present a difficult task of claim construction." *Halliburton Energy Serv. v. M-I, LLC,* 514 F.3d 1244, 1249 (Fed. Cir. 2008). If the meaning is determinable, the claim is valid, even if the meaning is "one over which reasonable persons will disagree." *Id.* To prove that a claim is invalid the accused infringer must provide "clear and convincing evidence" that a person in the art could not discern the boundaries of the claim based on the claim, specification, and the prosecution history. *Id.* The Defandants

argue that because a claim construction is a legal conclusion rather than a finding of fact to decided by a jury, the requirement of a "clear and convincing" evidentiary standard has no application. (Defs.' Mot. Summ. J. App. at 6). The Defendants' argument against the Federal Circuit's standard is unpersuasive. The heavy weight of authority, including the cases that Defendants rely upon, is in support of the clear and convincing standard. *E.g., Id.*; *Datamize*, 417 F.3d at 1347 (stating that patents are presumed valid even in the face of some ambiguity). The Federal Circuit adopted this standard with full knowledge that a claim construction is a legal conclusion and reasonably expects a judge to be able to apply a clear and convincing standard. Finally, this standard is further supported by the strong presumption of validity that the courts extend to patents. *See, e.g., Datamize,* 417 F.3d at 1347.

B.  Analysis

"When the specification explains and defines a term used in the claims, without ambiguity or incompleteness, there is no need to search further for the meaning of the term." *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1138 (Fed. Cir. 2007); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir.1998). In this case the patent specification had a definition for the contested phrase "nutritionally effective amount" which stated that it was the "amount which will provide a beneficial nutritional effect or response in a mammal." (Pl.'s Cl. Const. App. at 14 col 9, ll. 66-67 & col. 10, l. 1). Not only does the specification contain a definition, but previous cases have held that "effective amount" is a common and acceptable term when used in claims and not ambiguous or indefinite if a person of ordinary skill could determine the specific amounts "without *undue* experimentation." *See, e.g., Geneva Pharm., Inc. v. GlaxoSmithKline PLC,* 349 F.3d 1373, 1383 (Fed. Cir. 2003) (applying

"effective amounts" in a pharmaceutical situation); *Nisus Corp. v. Perma-Chink Sys., Inc.*, No. 3:03-CV-120, 2005 WL 5164855, at *8 (E.D. Tenn. 2005) (applying "effective amounts" in a non-pharmaceutical patent). Therefore, the only questions left to determine are whether the addition of the word "nutritionally" to the phrase "effective amounts" makes the phrase ambiguous and whether a person of ordinary skill can determine the amounts without undue experimentation. Defendants' argue that this use of "effective amounts" is very similar to the one in *Geneva*. (Defs.' Mot. Summ. J. Br. at 10-11). In that case, the court held that a patent claim that contained the word "synergistically" to modify the phrase "effective amount" was invalid. *Geneva*, 349 F.3d at 1384. But that case is not sufficiently analogous to this situation because the court in that case was determining whether a patent claim was valid in the face of "statutory double patenting" rather than determining invalidity based on ambiguity. *Id.* The court only ruled that the claim was invalid due to the statutory double patenting and did not rule that the addition of "synergistically" to the phrase "effective amounts" made the claim ambiguous. *Id.* Furthermore, adding a modifying word to an acceptably clear phrase typically will decrease ambiguity and make the phrase more clear, as it did in this claim.

The Defendants also argue that the claim is invalid, because there is not sufficient guidance to allow one skilled in the art to determine the bounds of the claim without undue experimentation. (Defs.' Mot. Summ. J App. at 8). Defendants claim that there is no "objective standard" to determine the scope of the claimed invention. *Id.* at 10. Specifically, the Defendants argue that one skilled in the art cannot determine how to measure a patient's overall health and consequently cannot determine whether another supplement infringes upon the Asserted Claims. *Id.* Although courts do require an objective standard, the Federal Circuit has

ruled that as long as there is "some standard for measuring," the claim is valid. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1381 (Fed. Cir. 2001) (citing *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir.1984)). Here, the patent does give some standard of how to measure one's overall health. The patent states that the overall health can be measured by certain markers including energy level, stiffness, pain, and discomfort among others. (Pl.'s Cl. Const. App. at 15 col 11, ll. 51-56). This evaluation standard does provide enough guidance to satisfy the low requirement of "some standard" required in *Exxon*. Defendants find this standard to be insufficient. Defendants claim that this standard requires undue experimentation to determine the exact amount required. *Id.* This argument is unpersuasive, because the reaction to these dietary supplements, like many medications, can be measured from the change in the patients' symptoms. Additionally, the patent does provide some further guidance by stating that the typical dose is between about one and about twelve capsules, and further states that the specific amount will vary by person depending on such factors as genetics, disease, and diet among others. *Id.* at ll. 58-64. The factors affecting the size of doses for the supplement are similar and correspond to many of the same factors affecting the size of doses of prescription drugs. Although no specific dosing is given, it can be measured with no more *undue* experimentation than the evaluations required in the prescription of many valid pharmaceutical patents.

Defendants also argue that the claim is indefinite because the use of supplements would at some times infringe and other times not. Defendants argue that this makes the claim invalid because one skilled in the art would be required to "make a separate infringement determination for every set of circumstances in which the composition may be used ..." *Halliburton*, 514 F.3d at

**Page 7**

1254. Although, Defendants rely heavily upon *Halliburton* for this argument, *Halliburton* is highly distinguishable from this case. In that case, the "fragile gels" used would sometimes be inadequate due to various scenarios involving different factors. *Id.* In that case, rather than using different amounts of the patented material, a situation may call for an entirely different material. Here, the only question is the amount of the supplement to be used rather than whether a different supplement should be used altogether. Therefore, this patent claim does not have an fatally indeterminate nature like the patent in *Halliburton*. Furthermore, a requirement of specific amounts is counter to one of the Federal Circuit's canons: no requirement for a patent to have mathematical precision to be valid. *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1341 (Fed. Cir. 2003) (stating that a patent does not have to be written with mathematical precision to meet the requirement of definiteness); *In re Marosi*, 710 F.2d 799, 802-03 (Fed. Cir.1983).

**IV.    Review of the Defendants' Objections the Magistrate Judge's Recommendations**

As a preliminary matter, the court did not consider the expert testimony evidence, because when an interpretation can be made from intrinsic evidence alone, the use of extrinsic evidence is improper. *See, e.g., Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

A.  "Isolated and Purified"

Defendants object to the Magistrate Judge's recommendation that the interpretation of the phrase "isolated and purified" should be "separated from other, unwanted substances." Although the Defendants urges that this interpretation is at least necessary to isolate and purify, Defendant argues that the interpretation of the claim should be more narrow: "individually separated from

other, unwanted substances from a source by a process that achieves a desired level of concentration of each saccharide." (Pl. Cl. Constr. Br. at 18). Like the Magistrate Judge, this court first notes that nothing in the language of the patent suggests that each saccharide must be separated from all other saccharides.

1. Prosecution History

The Defendants' first objection to the interpretation of this claim is that the Plaintiff surrendered all other embodiments by using Example 2 as its only stated example to explain "isolated and purified" to the patent examiner in a phone conversation. (Defs.' Obj. to Recomm. at 5). The Defendants argue that the Magistrate Judge was wrong in stating that the Plaintiff had not surrendered all other embodiments. They first argue that although a prosecution disclaimer must be "clear and unmistakable disavowal," the disclaimer can be implicit, and the Magistrate Judge erred in his application of this rule. *Id.* The Defendants rely on one case to support their argument of an implicit disavowal and state that the Magistrate Judge's Recommendation is inconsistent with the authority. *Id.* at 6. That argument is not correct, because this situation is clearly distinguishable from the scenarios stated by *Computer Docking Station Corp.*, which the Defendants relied upon to support their argument of implicit disavowal. (Defs.' Obj. to Recomm. at 6); *See Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008). The scenarios that the Federal Circuit cited in that case all had explicitly clear disavowals, and the court even explicitly stated that a prosecution disavowal "does not apply to an ambiguous disavowal." *Id.* at 1374. In fact, the court emphasized that when a patentee describes a specific function in the prosecution phase, the description does not limit the claims further. *Id.* Also, that court stated that when a statement is amenable to multiple reasonable

**Page 9**

interpretations the statement is not a disavowal. *Id.* Thus, the Magistrate Judge's Recommendation concurs with the language of that court. For these reasons, the court does not find that the authority cited by the Defendants supports the lenient standard that they urge this court to adopt for this situation.

The Defendants argue that the prosecution history as a whole contains a clear disavowal. Defendants claim that the patentee differentiated prior art by stating that the prior art was distinguishable from the present invention, because the prior art did not make the saccharides bioavailable in individual forms. (Defs.' Obj. to Recomm. at 10). The Defendants choose to focus on the use of "individual forms" as their sole focus of their argument, but another reasonable interpretation is made possible by including the word "bioavailable" into the analysis. The Plaintiff states that the use of different compositions such as in animal or fiber form can prevent the body from absorbing the nutrients thus making them not bioavailable. (Pl.'s Response to Obj. at 16). Using those sources, the saccharides would have to be made into monosaccharides before being bioavailable. *Id.* Because the Plaintiff used different sources that did allow bioavailability without the further refinement, this is a reasonable interpretation of the statement in the alleged disavowal. And as the court in *Computer Docking Station* stated, when there are multiple reasonable interpretations of a patentee's statement in the prosecution period, the court should find that there was no prosecution disavowal. *Computer Docking Station*, 514 F.3d at 1374. Furthermore, although the patentee does refer to Example 2 in the response, patentee never said that Example 2 was the only embodiment. Therefore, this court agrees with the Magistrate Judge and finds that there was no "clear and unmistakable" prosecution disavowal and will interpret the patent on what is claimed in the patent.

**Page 10**

### 2. The conflict of "isolated" and "purified"

The Defendants' other argument is that the words isolated and purified must be given different meanings. Although, it is true that two terms that are closely related should give a different meaning to the words, sometimes different words can be used to express similar concepts even if it is "poor drafting practice." *See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996); *Bancorp Servs., LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004). Additionally, there is nothing in the claims, specification, or prosecution history that states that the saccharides must be separated "from a source by a process that achieves a desired level of concentration of each saccharide." Instead, the specification shows a separation of the saccharides from unwanted materials and nothing more.

### 3. What "Isolated and Purified" Modifies

The Defendants' last contention with the Recommendation is that the Magistrate Judge did not address what the phrase "isolated and purified" modifies. (Defs.' Obj. to Recomm. to 19). Reading the patent, "isolated and purified" clearly modifies "saccharides" which this court has interpreted to mean "carbohydrates or sugars which can be in the form of mono-, oligo-, and/or polysaccharides." Furthermore, these saccharides can appear in polysaccharide form as a combination of sugars. Therefore, the sugars do not have to be individually isolated and separated as the Defendants urge, but rather may appear in their polysaccharide form.

### 4. Construction of "Isolated and Purified"

Thus, this court construes this phrase to be the portion of the claim construction to which both parties agreed and the Magistrate Judge ruled: "separated from other, unwanted substances."

Furthermore, "isolated and purified" does not mean that the saccharides have to be individually isolated and separated from each other.

### B.  "Nutritionally Effective Amounts"

The Defendants' first objection dealing with the Magistrate Judge's treatment of the phrase "nutritionally effective amounts" was to the Magistrate Judge's refusal to consider the Motion for Partial Summary Judgment contemporaneously with the claim construction.  (Defs.' Obj. to Recomm. to 3).  Because this court has decided the Motion for Partial Summary Judgment, this objection is no longer relevant.  In the alternative, Defendants ask that the court interpret the claim to mean "sufficient amount of each saccharide to cause a beneficial response as measure by a statistically significant improvement in a marker."  (Defs.' Cl. Constr. Br. at 24).  Defendants begin with the embodiment that is present in all of the specifications and tightens the interpretation even more.  This interpretation is unsatisfactory for two reasons.  First, the court must be careful to not import limitations from the specifications into the claims, because the specification contains only one preferred embodiment.  *LizardTech, Inc. v. Earth Res. Mapping, Inc.* 433 F.3d 1373, 1377 (Fed. Cir. 2006) (per curiam).  Second, like the Magistrate Judge stated, when the specification defines a claim term unambiguously, there is no need to search further for the meaning of that term.  *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1138 (Fed. Cir. 2007);  *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir.1998).  Thus, this court ACCEPTS the Magistrate Judge's construction that "nutritionally effective amounts" is to be construed as "that amount which will provide a beneficial nutritional effect or response in a mammal."

## V. Conclusion

For the reasons stated herein, the Court DENIES the Defendants' Motion for Partial Summary Judgment and ACCEPTS the Findings and Recommendations of United Magistrate Judge.

IT IS SO ORDERED.

Signed this 29th day of October 2009.

*[signature: Jorge A. Solis]*
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE